**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 7** |
| **CABE & CATO, INC.** | ) | |
| | ) | **Case No. 13-62455** |
| Debtor. | ) | |

---

### BURR & FORMAN, LLP'S RESPONSE IN OPPOSITION TO TRUSTEE'S MOTION TO DISQUALIFY COUNSEL

---

COMES NOW Burr & Forman LLP ("Burr"), by and through the undersigned counsel, and hereby files its Response in Opposition to the Trustee's *Motion to Disqualify Counsel* (Doc. No. 115) (the "Motion to Disqualify") and her *Brief in Support of Motion to Disqualify Counsel* (Doc. No. 116) (the "Brief"), requesting denial of the Motion.  As grounds therefore, Burr states as follows:

### PRELIMINARY STATEMENT

Under precedent in the Eleventh Circuit and the Northern District of Georgia, the Motion to Disqualify is wholly unwarranted, and has been interposed merely a litigation tactic.  Burr requests that the Court deny the motion, and grant such other and further relief as the Court deems appropriate.

### INTRODUCTION

1.      On August 20, 2014, the Trustee filed her Motion to Disqualify, asking the Court to "enter an order disqualifying Burr & Forman, LLC [sic] from representing Turnkey, Mr. Cabe, and Mr. Cato in any discovery or any adversary action brought by the Trustee."

1

2.      As an initial matter, the Trustee has not filed any adversary proceeding against Burr, Turnkey, Mr. Cabe, or Mr. Cato.  Shortly after this case was filed in June 2013, the Trustee alleged claims against Burr, Turnkey, Mr. Cabe, and Mr. Cato, but has filed no formal action against any of them.   The parties attempted to settle any and all alleged claims through mediation, but a settlement agreement was never approved by this Court.  At all times, Turnkey, Mr. Cabe, Mr. Cato, and Burr (sometimes collectively referred to herein as the "Respondents") have denied any liability for any claim asserted by the Trustee.

3.      On or about September 17, 2013, the Trustee filed her Motion to Settle and Compromise Various Controversies (Doc. No. 48) (the "9019 Motion"). In the 9019 Motion, the Trustee indicated that the estate maintained claims against Burr and indicated her intent to file such claims against Burr. See 9019 Motion, ¶ 8 ("the "Trustee is not settling and specifically reserves any and all claims which the estate may possess against [Burr]").

4.      On or about February 28, 2014, the Trustee served discovery requests against Burr, Turnkey, Mr. Cabe, and Mr. Cato under Fed. R. Bankr. P. 2004, presumably in an attempt to build a case against the Respondents.  Although there was some dispute about the nature and extent of the document requests, the Respondents have fully complied with all discovery requests and have produced all relevant, non-privileged documents requested by the Trustee.  However, the Trustee has requested many confidential and privileged documents that bear no relationship to this case or the Trustee's claims.

5.      To that end, on March 21, 2014, Burr filed Motions to Quash the Trustee's subpoenas against Respondents (Doc. Nos. 91-95 and 100-101), which were ultimately heard by this Court on May 5, 2014.  At the hearing, the Court ordered the Respondents to produce a privilege log to the Trustee describing the confidential and privileged documents, and for the

21666702 v1

parties to meet and confer over the privilege log before the Court's rules on the Motions to Quash. Burr and Respondents have complied with the Court's instructions, but the Trustee has refused to meet and confer. Instead, the Trustee filed her Motion to Disqualify.

6.      In the Motion to Disqualify, the Trustee makes numerous unsubstantiated allegations to support her position, including without limitation the following: (i) the Trustee's investigation "supports her claims against Cabe, Cato, Turnkey, and Burr for recovery of fraudulent conveyances and conspiracy to commit fraudulent conveyances . . . including claims that Burr actively assisted the Debtor and the other parties in hiding assets and money from the Debtor's creditors," *see* Brief, page 1; (ii) "Burr itself stands accused of intentional, fraudulent conduct," *see id.*, page 3; (iii) "as has already been shown in the Trustee's Rule 2004 examinations, Burr's members are in possession of material information and participated in communications that are required to be produced to the Trustee," *see id.*, page 4; and (iv) "the Trustee has claims against Turnkey as . . . a recipient of the Debtor's assets for less than fair market value," *see id.*, page 6.

7.      Despite (a) having expressly represented to this Court that the Trustee intended to file claims against Burr as far back as September 2013 and (b) apparently having sufficient confidence in the validity of the estate's claims to make the allegations described in paragraph 6 above, the Trustee has not filed suit against Burr or any of the other Respondents. Instead, she has filed the Motion to Disqualify, and sought to have the Motion heard without even providing Burr the opportunity to defend.

**UNDISPUTED FACTS**

The facts underlying the Trustee's Motion Disqualify, and the Trustee's allegations, are largely undisputed. Those facts are as follows:

3

8.      On or about May 10, 2007, the Debtor, Cabe & Cato, Inc. ("C&C"), along with two co-investors, filed suit against Andante Development, LLC ("Andante") in Walton County, Florida, Circuit Court seeking return of an earnest money deposit paid to participate in the purchase of a pre-construction condominium unit in Walton County, Florida from Andante.

9.      On July 20, 2010, Andante obtained a judgment against C&C and the other two investors for $714,899.59 related to the sales of the condominium unit and its breach of contract counterclaim.   On November 30, 2010, Andante obtained an additional Order Granting Prejudgment Interest against C&C and the other two investors in the amount of $348,465.00.

10.     Burr did not represent C&C in connection with the lawsuit against Andante, or any matter involving Andante's efforts to collect upon its judgment ultimately obtained in Walton County Circuit Court.

11.     Prior to July 2010, C&C operated two separate business operations - as both an independent sales organization ("ISO") and an ATM operator.

12.     Beginning in approximately late spring / early summer, 2010, C&C engaged Burr to assist in the process of separating the ISO business of C&C from the ATM operator business, resulting in the sale of certain assets of C&C to Turnkey as described below.

13.     In order for Turnkey to engage in the ATM operator business, in September, 2010, Turnkey purchased from C&C the operator-related assets owned by C&C—specifically, 119 ATM machines ($53,650) and the cash needed to operate them ($240,260).

14.     On or about September 24, 2010 Turnkey signed and delivered to C&C two promissory notes − one for $53,650 and the other for $240,260.  Both promissory notes were paid in full by Turnkey to C&C more than one year before the date C&C ultimately filed its bankruptcy petition.

21666702 v1

15.    Despite the existence of these promissory notes, and Turnkey's prior obligations to pay to C&C the amounts due under those notes, Andante as a judgment creditor never sought to garnish or attach the amounts owed by Turnkey to C&C under the notes or otherwise.

16.    Other than the ATM machines and the cash described above, Turnkey purchased no other assets from C&C.

17.    Burr represented Mr. Cabe, Mr. Cato and Turnkey in connection with Andante's efforts to seek discovery from Mr. Cabe and Mr. Cato individually, impose sanctions against Messrs. Cabe and Cato individually, and Andante's subsequent fraudulent conveyance action against them and Turnkey (which Andante filed in November 2012).

18.    In February 2013, the Debtor executed and delivered to Burr a collateral assignment of a $100,000 note receivable due from Brad Keiller and Spearmint Rhino Development Corporation to secure payment of past due and future attorney's fees, for which the Debtor was obligated under an agreement to indemnify Messrs. Cabe and Cato for their fees incurred in connection with the Andante collection actions.

19.    The Debtor filed a petition for relief in the above-styled bankruptcy case on June 4, 2013 – over one year ago (Dkt. No. 1).  Barbara B. Stalzer was appointed as Chapter 7 Trustee (the "Trustee").

20.    On June 14, 2013, the Trustee filed her Joint Emergency Motion for Relief from the Automatic Stay (Dkt. No. 7).  In that motion, the Trustee alleged that "Burr & Forman, LLP, counsel for Turnkey and Cato and Cabe, individually, in both the Walton County Case and the Fraud Case, has repeatedly taken the position that it does *not* represent C&C in either matter." See, Dkt. No. 7, para. 18(e).

5

21666702 v1

21.    On June 18, 2013, the Debtor filed its bankruptcy Schedules and Statement of Financial Affairs (Dkt. No. 19).  In its Statement of Financial Affairs, the Debtor listed the collateral assignment of a promissory note to Burr.

22.    On June 19, 2013, the Trustee sent a letter to Joseph Burton, counsel for the Debtor, requesting production of documents from the Debtor, including documents in the Debtor's possession regarding its former representation by Burr, and Burr's secured claim.

23.    On July 1, 2013, Burr furnished to Debtor's counsel (for delivery to the Trustee) the indemnification and assignment documents associated with Burr's representation of Messrs. Cabe and Cato under the terms of their indemnification agreement and the collateral assignment of the promissory note.

24.    On August 22, 2013, Burr furnished to Trustee's counsel over 4,500 pages of the Debtor's financial and other records that it had received and previously delivered to counsel for Andante pursuant to Andante's prior post judgment discovery requests.

25.    On August 23, 2013, Burr as counsel for Turnkey, Mr. Cabe and Mr. Cato, attended a mediation with the Trustee and Andante.  At the mediation, the Trustee raised her claims against Burr and noted a potential conflict of interest, yet sought to proceed with mediation nonetheless.

26.    On September 17, 2013, the Trustee filed her Motion to Settle and Compromise Various Controversies (Dkt. No. 48), noting therein that the Trustee sought to preserve her rights to pursue claims against Burr, and anticipating further mediation of the claims against Burr on October 18, 2013 (Dkt. No. 48, para. 8 and Exhibit A).  The Trustee, however, withdrew the Motion (Dkt. No. 55) and cancelled the scheduled October 18, 2013 mediation with Burr.

21666702 v1

27.     On October 29, 2013, the Trustee filed her Interim Report (Dkt. No. 56), noting therein avoidance claims against Turnkey and Burr, based upon the sale of certain assets by the Debtor to Turnkey, and Burr's prior representation and payments for services (Dkt. No. 56, lines 14 and 15).

28.     On February 28, 2014, the Trustee filed eight (8) separate Motions for 2004 Examination and to Produce Records, seeking, *inter alia*, examination of Burr and three of its attorneys, and demanding that Burr produce the financial records of Turnkey, and Messrs. Cabe and Cato personally, even though the Trustee was aware that the three parties listed are not debtors in this case, and no adversary proceeding had been instituted against them (Dkt. Nos. 59-66).  Subpoenas for Rule 2004 Examination were issued on March 7, 2013 (Dkt. Nos. 83-89).

29.     On March 21, 2014, Burr and the attorneys, as well as Turnkey and Messrs. Cabe and Cato, filed their Motions to Quash and Objections to the Rule 2004 Subpoenas, asserting primarily that the Subpoenas sought personal financial information from non-debtor third parties (Turnkey and Messrs. Cabe and Cato) and other privileged third-party information that was beyond the scope of Bankruptcy Rule 2004(c) (Dkt. Nos. 91-95).

30.     On May 5, 2014, the Court held a hearing on the Motions to Quash and Objections to the Rule 2004 Subpoenas (Dkt. Nos. 91-95).  At that time, the Court directed Burr, Turnkey and Messrs. Cabe and Cato to produce those documents which were not subject to objection or privilege, along with privilege logs listing those documents which were not being produced.  The Court further directed that, upon receipt of the documents and privilege logs, counsel for the Trustee and the deponents were to review and try to resolve the objections to production for each item listed (item by item), and then submit to the Court for hearing any remaining objections that could not be resolved.

21666702 v1

31.     Burr, both as the subject of a Rule 2004 examination and on behalf of Turnkey and Messrs. Cabe and Cato, complied with the Court's direction and produced a privilege log (See, letter from Jon Kane to Russell Patterson dated June 30, 2014 and privilege log attached hereto as Exhibit A, and emails from Jon Kane and Russell Patterson to Court dated July 21 and 22, 2014 attached hereto as Exhibit B).

32.     Although Burr and Respondents complied with the Court's instructions, the Trustee has refused to meet and confer on the items listed in the privilege log as directed by the Court.  Instead, the Trustee filed her Motion to Disqualify Counsel (Dkt. No. 115).

33.     As a further litigation tactic, on August 21, 2014 the Trustee filed a Motion to Shorten Time and Request for Expedited Hearing (Dkt. No. 117) directed to the Motion to Disqualify Counsel, and did not advise undersigned counsel or attempt to coordinate the hearing. The Trustee's Motion to Shorten Time resulted in the Court's entry of an Order, *ex parte*, Granting the Motion to Shorten Time, and scheduling the hearing for August 27, 2014 (Dkt. No. 118).

34.     Immediately upon learning of the Order (Dkt. No. 118), undersigned counsel contacted the Trustee and her counsel.  Although Trustee's counsel was aware that undersigned counsel was in Orlando and unable to prepare for and attend the hearing set for August 27, 2014, he stated he would prefer to proceed with the hearing in the undersigned's absence.

35.     Because of the Trustee's refusal to agree to reschedule the hearing, Burr was required to file an Emergency Motion for Reconsideration of this Court's Order Granting Trustee's Motion to Shorten Time (Dkt. No. 120), to be afforded the opportunity to be heard on the Motion to Disqualify Counsel.  On August 27, 2014, the Court entered its Order and

21666702 v1

Assignment of Evidentiary Hearing (Dkt. No. 123), rescheduling the evidentiary hearing on the

Motion to Disqualify for September 15, 2014.

## ARGUMENT

36.     "The party bringing the motion to disqualify bears the burden of proving the

grounds for disqualification." *In re Apyron Technologies, Inc.*, 2006 WL 6591604, at *5 (Bankr.

N.D. Ga. Nov. 28, 2006) (quoting *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)).

"Because a party is presumptively entitled to the counsel of his choice, that right may be

overridden only if 'compelling reasons' exist." *Id.*  A disqualification order "is a harsh sanction,

often working substantial hardship on the client" and should therefore "be resorted to sparingly."

*Id.* (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)).  "A

motion to disqualify brought by opposing counsel 'should be viewed with caution . . . for it can

be misused as a technique of harassment.'"  *Id.* (quoting Ga. Rules of Prof'l Conduct, R. 1.7, cmt.

15).

37.     In the Eleventh Circuit, courts must apply a two-factor test in determining

whether to disqualify an attorney:

> First, although there need not be proof of actual wrongdoing, "there must be at
> least a reasonable possibility that some specifically identifiable impropriety did
> occur." Second, "a court must also find that the likelihood of public suspicion or
> obloquy outweighs the social interest which will be served by a lawyer's
> continued participation in a particular case."

*In re Waterfall Village of Atlanta, Ltd.*, 103 B.R. 340, 344 (Bankr. N.D. Ga. 1989) (quoting

*Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1210 (11th Cir.1985) (quoting *United

States v. Hobson*, 672 F.2d 825, 828 (11th Cir.1982) (quoting *Woods v. Covington County Bank*,

537 F.2d 804, 813 & n. 12 (5th Cir.1976)))); *see also In re Polypropylene Carpet Antitrust

Litigation*, 181 F.R.D. 680, 697 (N.D. Ga. 1998) (applying the so-called *Hobson* test on a motion

21666702 v1

to disqualify an attorney based upon an alleged ethical violation); *In re Advanced Telecommunication Network, Inc.*, 326 B.R. 191, 194 (Bankr. M.D. Fla. 2005) (same). The same standard applies in bankruptcy cases. *In re Waterfall Village*, 103 B.R. at 344. Both factors must be satisfied in order for the Court to disqualify Burr. *Id.*

38.    If a disqualification motion is based upon an alleged ethical violation, "[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (quoting *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997)).

39.    The Trustee's Motion to Disqualify should be denied because it was filed as nothing more than a litigation tactic, and as a matter of law, the Trustee has waived the right to seek disqualification of Burr. Burr intends to ardently defend the claims that the Trustee has stated she will assert against the Respondents because the evidence is clear that no fraudulent transfer occurred. Consequently, the Trustee has absolutely no claims against the Respondents arising out of the asset sale and therefore, the Trustee should not be permitted to manufacture a disqualification merely because she asserts she possesses purported claims with no merits.

40.    More importantly, the Trustee has known (and acknowledged), since the beginning of this bankruptcy case, that Burr has represented Turnkey and Messrs. Cabe and Cato in responding to all of the Trustee's discovery requests and informal accusations, and that Burr formerly represented the Debtor and Turnkey during the transaction that is the subject of the Trustee's accusations and inquiries. The Trustee's failure to promptly seek disqualification of Burr is a waiver of the right to do so now, as a matter of law, and without regard to the severity

21666702 v1

of any alleged ethical violation.  *Cox v. American Case Iron Pipe Co.*, 847 F.2d 725, 729-31
(11th Cir. 1988).

41.    The Trustee asserts that Burr should be disqualified for three reasons. First, the
Trustee asserts that "Burr should be disqualified because the claims and allegations the Trustee
has and will make against them in anticipated litigation creates a conflict of interest between
Burr and their client, the Debtor" See Motion to Disqualify, p. 2. In other words, the Trustee is
taking the position that Burr should be disqualified because one firm client (the Debtor/Trustee)
will be suing other firm clients (Turnkey, Mr. Cabe, and Mr. Cato).  As will be shown below,
this assertion ignores the fundamental and essential fact that the Debtor is no longer a client of
Burr.  The Debtor and the Trustee have each been represented by a separate attorney since the
filing of the above-captioned bankruptcy case, and there is no indication in the record that Burr
has represented the Debtor in this bankruptcy case.

42.    The Trustee's second purported reason for disqualifying Burr is that the Debtor is
a former client and Burr is prohibited from representing Turnkey, Mr. Cabe, and Mr. Cato in the
current discovery dispute and in future litigation brought by the former client (i.e. the Trustee).
This contention is likewise devoid of merit because the Trustee cannot meet her burden of proof
on any relevant issue for an alleged conflict of interest.  More importantly, however, the Trustee
has long since waived her right to seek disqualification, and the Motion to Disqualify is nothing
more than a tool to gain a tactical advantage against Respondents.

43.    Finally, the Trustee asserts that because a small number of Burr attorneys may be
called as witnesses in the future litigation, the firm as a whole should be disqualified. This
argument overlooks the fact that there is no firm-wide imputation or disqualification simply

21666702 v1

because a firm lawyer may be a fact witness. Additionally, disqualification based upon an attorney being a fact witness applies only when cases are tried by jury.

44.    The fundamental problem with the Trustee's Motion to Disqualify is that she puts the cart before the horse.  After receiving all relevant, non-privileged documents and information from the Respondents, the Trustee still has no evidence to support her conclusion that the estate has adverse claims against the Respondents.  Yet, the Trustee's unsubstantiated alleged claims are the basis for her Motion to Disqualify.  In other words, the Motion to Disqualify has no basis in law or fact, unless the Debtor has some adverse claim against the Respondents; the Trustee has no proof of any adverse claims, but persists in making the claims based upon mere speculation.  The Trustee's Motion to Disqualify relies upon this speculation, and therefore, must be denied.

### I.    THE TRUSTEE HAS WAIVED THE RIGHT TO FILE THE MOTION TO DISQUALIFY, WHICH WAS FILED SIMPLY AS AN IMPROPER LITIGATION TACTIC THAT CONSEQUENTLY SHOULD BE DENIED.

45.    In the Eleventh Circuit, a former client's failure to file a motion for disqualification upon discovery of the underlying facts supporting disqualification is a waiver of the right to seek disqualification, *as a matter of law*. *Cox*, 847 F.2d at 729-31.

46.    In *Cox*, the moving party waited eighteen months after a law firm's merger to move for disqualification of the firm based upon the merger.  *Id.* at 731.  The movant asserted that it delayed in filing the motion because, at the time of the merger, (i) the case was already on appeal, (ii) the parties were engaged in ongoing settlement negotiations, and (iii) movant filed the motion shortly after negotiations ended.  *Id.*  Therefore, as the movant argued, there was no need to seek disqualification (an expensive and time-consuming process) at an earlier time.  *Id.* The Eleventh Circuit wholly rejected this argument, holding that the movant's failure to file the

21666702 v1

motion for disqualification when it first discovered the potential merger (prior to the actual merger) constituted a waiver of the right to seek disqualification, as a matter of law. *Id.*

47.     Moreover, a former client may waive *any* alleged ethical violation, along with the right to disqualify its prior attorney, even a violation that: (i) is "serious and pervasive," (ii) involves employment of a prior attorney by an adverse party in litigation, or (iii) involves a criminal case. *Id.* at 729-30. Also, unfamiliarity with the law on disqualification is not an excuse for a delay. *Jackson v. J.C. Penney Co., Inc.*, 521 F. Supp. 1032, 1035 (N.D. Ga. 1981).

48.     Likewise, in the Northern District of Georgia, a party must file a motion for disqualification "with promptness and reasonable diligence once the facts upon which the motion is based have become known," and failure to "act promptly" is a waiver of that right. *Glover v. Libman*, 578 F. Supp. 748, 767 (N.D. Ga. 1983) (internal citations and quotations omitted); *see also Sam v. Reich*, 2006 WL 319259 (N.D. Ga. 2006) (three month delay waives right and warrants denial of motion for disqualification); *Jackson v. J.C. Penney Co., Inc.*, 521 F. Supp. 1032, 1034-35 (1981) (finding that "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion," and failure to do so amounts to waiver).

49.     It cannot be overstated that, even in the case of a *clear* ethical violation implicating a former client, the right to seek disqualification is waived if not filed timely. *Cox*, 847 F.2d at 730 (finding waiver after assuming movant met its burden of proof on whether prior attorney represents adverse party on substantially related matter); *Glover*, 578 F. Supp at 759-60 (finding estoppel and waiver of right to disqualify after finding that attorney's representation of adverse party unquestionably violated ethical rule).

21666702 v1

50.     In *Glover*, the Northern District of Georgia explains that a motion to disqualify is equitable in nature, and therefore, the Court should "consider the prior conduct and statements of the movant and its attorneys on the question of the movant's good faith and credibility in connection with the motion to disqualify."   578 F. Supp. at 767.   A movant's delay "can be reasonably perceived as an admission that the principles of confidentiality and conflict of interest are not significantly related to the procedural integrity of their case." *Id.*

51.     Furthermore, if a movant delays in filing a disqualification motion, a court can reasonably conclude that such a motion is "brought solely for tactical reasons, and not for any sensitivity to ethical concerns."   *Id.* at 769; *see also Jackson*, 521 F. Supp. at 1034-35 ("A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed.").

> Disqualification of counsel puts pressure on a Defendant . . . in several ways. Just the litigation of the motion forces the Defendant to incur thousands of dollars in legal fees. If the Defendant rolls over or is forced to retain separate independent counsel for each Defendant, the cost of defending the litigation increases exponentially. Separate counsel probably increases the chances that one or more of the individual Defendants will start pointing the finger at . . . other Defendants, thereby increasing the chances of a settlement or verdict in favor of the Plaintiffs. And, disqualification would deprive the Defendants of [the attorney's] knowledge of [Defendant] and experience in handling cases such as this. *Motions to disqualify counsel are highly disfavored in the law because the threat of disqualification can be a powerful tactical weapon.*

*Doe v. Fulton-Dekalb Hosp. Auth.*, 2006 WL 2990442, at *4 (N.D. Ga. Oct. 19, 2006) aff'd, 628 F.3d 1325 (11th Cir. 2010).

52.     A disqualification motion filed to gain a tactical advantage warrants sanctions, as such a motion is an ethical violation in and of itself.   *Glover*, 578 F. Supp. at 769 (citing to Fed. R. Civ. P. 11 and other ethical rules prohibited the filing of motions for purposes of delay); *see*

21666702 v1

*also In re Restaurant Development Group, Inc.*, 402 B.R. 282, 289 (Bankr. N.D. Ill. 2009) ("While motions to disqualify can serve a legitimate purpose, they are viewed with caution because they can also be used as a litigation tactic to harass one's opponent.").

53.     Since the inception of this bankruptcy case, the Trustee and her attorney have known about Burr's former representation of the Debtor, and Burr's current representation of Turnkey and Messrs. Cabe and Cato.  Upon discovery of these facts, the Trustee failed to file a disqualification motion, and delay in doing so for well over a year.  Instead, the Trustee has conducted extensive discovery in this case, and caused Burr to respond to multiple accusations of improper conduct and other liabilities on behalf of itself and Messrs. Cabe and Cato, as well as participation in mediation over a year ago, without success, and attendance at multiple hearings. After Burr moved to quash the Trustee's irrelevant and immaterial discovery requests in March 2014, the Court held a hearing and directed the parties to meet and confer regarding Burr's privilege log.  After receiving the privilege log, and instead of conferring on the log with Burr as directed by the Court, the Trustee filed the Motion to Disqualify.

54.     Compounding insult upon injury, the Trustee also simultaneously moved for an order shortening the time for the Court to hear the Motion to Disqualify, with the explicit desire to proceed on the Motion to Disqualify *without giving Burr an opportunity to attend the hearing and defend*.  The Trustee has no pending deadline for filing her actions, and there is no apparent reason for moving for an immediate disqualification, *ex parte*, other than to gain a tactical advantage in the overall bankruptcy litigation and on the Motion to Disqualify itself.

55.     The Court's ruling on the pending Motions to Quash would have put the last nail on the coffin of the Trustee's alleged claims (i.e. either by determining that the Trustee should conclude her fishing expedition, or by requiring the Respondents to produce information neither

21666702 v1

material nor relevant to the Trustee's alleged claims). In a last-ditch effort to obtain leverage and tactical advantage over Turnkey, Mr. Cabe, and Mr. Cato, the Trustee hopes to disqualify the attorneys with the most knowledge and experience regarding the Trustee's alleged claims, and to strip Turnkey, Mr. Cabe, and Mr. Cato of their counsel of choice.

56.    The Court can infer, from the Trustee's failure to promptly move for disqualification of Burr for more than fourteen months after discovering the alleged grounds for such disqualification, that the Trustee is more concerned about delay and litigation tactics than any alleged ethical violations. The Trustee's conduct is an admission of this fact. *See Glover*, 578 F. Supp. at 767-69. The Court should not condone such behavior, and should deny the Motion to Disqualify on grounds of waiver. Moreover, the Trustee's conduct and desire in prosecuting the Motion to Disqualify without due process to Respondents, and in making numerous false and unsubstantiated allegations in the Motion to Disqualify, simply confirms that the only purpose for the Motion to Disqualify is to gain a tactical advantage over Respondents— conduct that is, in and of itself, a sanctionable ethical violation. *Id.* at 769.

## II.    THE DEBTOR IS NOT A CURRENT CLIENT OF BURR.

57.    The Trustee points to an alleged conflict of interest between Burr's representation of the Debtor and that of Turnkey and Messrs. Cabe and Cato and asserts that "Burr should be disqualified because the claims and allegations the Trustee has and will make against [the Respondents] in anticipated litigation creates a conflict of interest between Burr and their client, the Debtor". However, in the Motion to Disqualify and the Brief, the Trustee fails to clarify that Burr *has never represented the Debtor* in this bankruptcy case and that the Debtor is not a firm client.

16

21666702 v1

58.    While Burr did represent the Debtor in the pre-petition transaction for the sale of the Debtor's ATM machines and their contents to Turnkey, this transaction occurred four (4) years ago and the Trustee is well-aware that the Debtor is no longer a firm client. Additionally, all parties to the sale transaction agreed to waive any potential conflict, and Burr is aware of no authority prohibiting a lawyer from representing both parties in a sale transaction. See Ga. R. Prof. Conduct 1.7, Comment 12 ("[I]n a negotiation common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them.").

59.    Simply put, the Trustee cannot now obtain a disqualification of Burr arising out of Burr's joint representation of seller and purchaser in a transaction that occurred four years ago when (a) Burr no longer represents the seller and (b) Burr obtained the informed consent of all parties to the transaction.

### III.    BURR'S PRE-PETITION REPRESENTATION OF THE DEBTOR IS NOT GROUNDS FOR DISQUALIFICATION.

#### A.    There is No Ethical Violation, Let Alone the "Reasonable Possibility That Some Specifically Identifiable Impropriety Occurred"

60.    The only reasonable possibility of an ethical violation involving Burr's representation of Respondents, assuming one exists, would relate to Burr's representation of the Debtor as a former client.

61.    Rule 1.9 of Georgia's Rules of Professional Conduct provides the following with regard to conflicts of interest involving former clients:

a.  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.
. . .

21666702 v1

c.  A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
1. use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
2. reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

62.     "This rule rests upon the presumption that confidences potentially damaging to the client have been disclosed to the attorney during the former period of representation." *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977).

63.     "The focus of the district court's inquiry should be on the precise nature of the relationship between the present and former representations."  *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752-53 (11th Cir. 2006).  "The Court must examine both the reasonableness of inferring that the confidential information allegedly given in the previous matter would have been given to a lawyer representing a client in those matters as well as the scope and relevance of the information to the issues raised in the pending litigation." *Jones v. InfoCure Corp.*, 2003 WL 22149656, at *4 (N.D. Ga. 2003).

64.     The "substantial relationship" rule ("was formulated to handle situations where an attorney switches to a new client who is on the opposite side from a former client on a common issue").  *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 479 F. Supp. 465, 468 (E.D. La. 1979); *see also Jones*, 2003 WL 22149656, at *4 (finding disqualification appropriate where attorney "changed sides").

65.     As Rule 1.9(a) itself makes clear, the "substantial relationship test" is limited to attorneys who have "switched sides" to represent an adverse interest:

A limit must be set on the class to whom courts will impute such knowledge absent proof of actual receipt. Presently, the courts have included within the

suspect class, and have disqualified, attorneys who have switched sides either to become counsel or to become parties themselves against former clients.

*George v. LeBlanc,* 78 F.R.D. 281, 288 (N.D. Tex. 1977), *aff'd,* 565 F.2d 1218 (5th Cir. 1977).[1]

66.     For instance, the "substantial relationship" rule does not necessarily apply to a lawyer who represented a former client in the context of a joint representation between the former client and the current client, even in a substantially related matter.  *Domed Stadium,* 479 F. Supp. at 468-69.  If the "substantial relationship" rule does not apply, the former client has the burden of proving that actual, relevant information was obtained and used to the disadvantage of the former client before the Court may find an ethical violation.  *LeBlanc,* 78 F.R.D. at 288; *cf.* Ga. R. Prof'l Cond. 1.9(c) (prohibiting use of information related to representation of former client to the disadvantage of the former client, with certain exceptions).  "As between joint clients there can be no 'confidences' or 'secrets' unless one client manifests a contrary intent." *Brennan's, Inc. v. Brennan's Restaurants, Inc.,* 590 F.2d 168, 172-73 (5th Cir. 1979).  In the context of prior joint representation, an exchange of confidential information is irrelevant; a lawyer is merely prohibited from using a former client's information to the disadvantage of the former client.  *See id.* at 172; Ga. R. Prof'l Cond. 1.9(c) (prohibiting use of information related to representation of a former client to the disadvantage of the former client, with certain exceptions).

67.     Other Circuit Courts have held that "the substantial relationship test is not implicated unless the attorney was in a position where he could have received information that his former client might reasonably have assumed the attorney would withhold from his present client." *Christensen v. U.S. Dist. Court for Cent. Dist. of California,* 844 F.2d 694, 698 (9th Cir.

---

[1] Decisions of the Fifth Circuit that existed on September 30, 1981 are binding on federal courts within the Eleventh Circuit.  *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981).

21666702 v1

1988) (citing *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977)).  The exception to the "substantial relationship" rule applies in situations "where the prior representation by the attorney in question was within the context of a joint representation between a former, but now adverse, client and a present, long-standing, client." *Rocchigiani v. World Boxing Counsel*, 82 F. Supp. 2d 182, 187 (S.D.N.Y. 2000) (citing *Allegaert*, 565 F.2d at 250); *see also Felix v. Balkin*, 49 F. Supp. 2d 260, 268 (S.D.N.Y. 1999) (applying the exception in *Allegaert* to situations "where the attorney's representation was of two, commonly interested, non-conflicting clients, one of whom is now complaining").

68.    In the case of prior joint representation of a former and current client, "'the substantial relationship is inapposite,' as the former client could not reasonably expect confidences imparted to the attorney during the course of the joint representation to be withheld from the other client." *Rocchigiani*, 82 F. Supp. 2d at 187-88 (quoting *Allegaert*).  Also, any representation of the former client occurs with knowledge that the law firm still represents the primary client and will continue to do so.  *Allegaert v. Perot*, 565 F.2d at 251.  In other words, such a law firm would have "never changed sides." *Id*.

69.    In *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, the complaining "former client" previously retained the subject law firm to consult on trial issues and handle the briefing and argument for an appeal, and based upon this prior representation, moved to disqualify the law firm in subsequent litigation on a similar matter.  *Id.* at 466-67.  Based upon a number of circumstances surrounding the law firm's prior representation, including its representation of the former client on a discrete appellate issue and the finding that "absolutely no confidential information was received," the *Domed Stadium Hotel, Inc.* court held that the "substantial relationship" test did not apply.  *Id.* at 468.  The decision, and the court's analysis of the Fifth

Circuit's standard in *LeBlanc* and *Brennan's* and application of the *Allegaert* case, ultimately turned on the fact that the lawyer did not switch sides. 479 F. Supp. at 469. Applying *LeBlanc* and *Allegaert*, the court in *Domed Stadium* also based its decision on the following conclusions after presentation of evidence: (i) the party seeking disqualification knew that any information obtained would not be confidential from the law firm's primary client and that the law firm would continue to use that information in representing the primary client, *id.* at 468-69; and (ii) the law firm was not "switching sides," and "never attempted to 'prosecute litigation.'" *Id.* at 468 (quoting *LeBlanc*, 78 F.R.D. at 289);[2] *accord Brennan's*, 590 F.2d at 172-73 (disqualification under "substantial relationship" rule only appropriate when information is used to the disadvantage of the former client).

70.     During its representation of the Debtor in selling part of its assets to Turnkey, Burr jointly represented Turnkey in the same transaction. Both parties consented to Burr's joint representation, and the Debtor knew that any information received would not be kept confidential from Respondents, that Respondents were Burr's primary clients, and that Burr would continue to represent Respondents in any other matters. To say otherwise would be non-sensical. Messrs. Cabe and Cato are the only individuals that owned and controlled both the pre-petition Debtor and Turnkey, and Burr took its directions from Messrs. Cabe and Cato in any representation of the pre-petition Debtor and Turnkey. There can be no "confidences" shared by the Debtor that Messrs. Cabe and Cato do not already possess.

71.     Moreover, the Trustee cannot prove that Burr has, in any way, "switched sides," or prosecuted an action against its former client, when the record reflects that Burr has assisted

---

[2] The *LeBlanc* and *Domed Stadium* courts also considered whether disqualification would deprive the current client of its choice of counsel, causing a set-back in the litigation. *LeBlanc*, 78 F.R.D. at 288; *Domed Stadium*, 479 F. Supp. at 468.

21666702 v1

Respondents in fully complying with all of the Trustee's demands.  Burr has not used any information to the disadvantage of its former client.

72.     Burr has always acted in compliance with both Rules 1.9(c) and 1.6 in responding to the Trustee's discovery requests under Rule 2004.  With regard to all information related to Burr's prior representation of the Debtor, Burr has willingly complied with the Trustee's discovery requests, as required by Rule 2004.  However, with regard to information wholly unrelated to the Debtor or any asset or cause of action of the bankruptcy estate, Burr has diligently opposed such requests as outside the scope of Rule 2004.

**B.     Social Interest In Burr's Continued Representation Outweighs The Likelihood of Public Suspicion or Obloquy**

73.     "A violation of professional ethics does not automatically result in disqualification of counsel." *Glover*, 578 F. Supp. at 765.  "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if compelling reasons exist." *Hermann*, 199 Fed. App'x at 752.  "[D]isqualification is a drastic remedy that deprives a litigant of counsel of their choosing." *In re Restaurant Development Group, Inc.*, 402 B.R. 282, 289 (Bankr. N.D. Ill. 2009).  "While motions to disqualify can serve a legitimate purpose, they are viewed with caution because they can also be used as a litigation tactic to harass one's opponent." *Id.*

74.     At its heart, a disqualification motion is a request for equitable relief, and therefore, the Court should "balance the costs and benefits" resulting from disqualification, "as well as examine the conduct of the movants and their attorneys in filing [the disqualification motion]." *Glover*, 578 F. Supp. at 765.  Even in the case of a non-waiveable conflict of interest, disqualification may not be appropriate. *Restaurant Development Group, Inc.*, 402 B.R. at 289.

21666702 v1

75.     In *Restaurant Development Group*, the bankruptcy court denied disqualification because it would serve no remedial or deterrent function in the case.  *Id.*  In a strikingly similar situation to this case, the court in *Restaurant Development Group* was faced with the decision of disqualifying counsel who represented the debtor and the debtor's corporate representatives during the trustee's investigation into alleged wrongful acts of the corporate representatives.  *Id.* at 290.  The court found that the law firm's "duty of loyalty to aid Debtor in cooperating with the Trustee would not be protected if the Court were to disqualify the [firm] from representing the [corporate representatives] because, . . . [they] would take any confidential information to their new legal representation."  *Id.*  "In other words, any possible conflict lies in [the corporate representatives], if they committed the acts alleged against them, not to the [firm]."  *Id.* Therefore, no remedial purpose would be served through disqualification.  *Id.*  In addition, the court in *Restaurant Development Group* found that "disqualification is particularly inappropriate as a sanction . . . because the burden of disqualification would fall primarily on the clients who would have to retain new counsel."  *Id.* at 290-91.

76.     It is clear that the Motion to Disqualify was filed untimely, and more than a year after the Trustee discovered the facts underlying the Motion.  This factor, alone, warrants denial. *Sam v. Reich*, 2006 WL 319259, at *7.  The Respondents' right to choose their own counsel also outweighs any alleged or perceived ethical violation the Trustee may conjure up.  Burr's primary client has always been Messrs. Cabe and Cato, and Burr only represented the Debtor at the request of Messrs. Cabe and Cato.  Burr represents them in a number of unrelated business and personal matters, including matters wholly unrelated to this bankruptcy case that are the subject of the Trustee's unauthorized fishing expedition.  Burr has the most knowledge and experience with these unrelated matters, and the most knowledge in defending Messrs. Cabe and Cato from

21666702 v1

the Trustee's overreaching discovery requests. Respondents have already complied with every discovery request of the Trustee, and now that the Court is set to rule on the pending motions to quash, it would severely burden Respondents, in time, money, and expertise, to hire new counsel in the current discovery disputes.

77. There is no prejudice to the Trustee if disqualification is denied. The same potential harm addressed by disqualification will remain even after disqualification. The Debtor/Trustee is not a separate entity that would be harmed unless Burr was disqualified; the Debtor is owned by Messrs. Cabe and Cato, and during the times relevant to the Trustee's accusation, the Debtor was controlled by them. Disqualification will not cure any perceived harm to the Trustee. The Trustee must rely upon information ultimately from Messrs. Cabe and Cato to make her case; even if they hired a new attorney, the same potential danger would exist.

78. As stated above, disqualification is an effective litigation tactic, often resulting in immediate settlement of claims whether warranted or not. The effect of disqualification would be to deprive Turnkey, and Messrs. Cabe and Cato, of their choice of counsel to provide a full and adequate defense. They have been represented in the collections efforts by Andante, and the Trustee's claims, by Burr for nearly four years, and have expended hundreds of thousands of dollars in time and effort into defense of these warrantless claims. This effort would be lost, and the costs of bringing new counsel into the case at this late stage would be prohibitive.

79. Lastly, there is no threat to the proper and efficient administration of this case, or the integrity of the judicial process, in Burr's continued representation. Burr has so far assisted Respondents in fully complying with all of the Trustee's inquiries. Burr is also the most competent and experience firm to represent the Respondents; Burr represented the Respondents during the transactions that are the subject of the Trustee's accusations, and Messrs. Cabe and

21666702 v1

Cato will be deprived of an effective and competent representation if the Trustee were to actually

file suit.  Therefore, Burr's disqualification will only harm the integrity of the judicial process,

and, thus, the Trustee's motion should be denied.  *Glover*, 578 F. Supp. at 767 (denying motion

to disqualify where disqualification would not benefit the integrity of the judicial process).

### IV.   BURR'S POTENTIAL PARTICIPATION IN AN ADVERSARY PROCEEDING AS PARTY AND WITNESS DOES NOT WARRANT DISQUALIFICATION

80.    Again, the Trustee must point to an actual conflict of interest in meeting her

burden to prove that Burr should be disqualified.  The Trustee cannot point to a potential future

lawsuit, make unsubstantiated allegations that Burr will be sued as a defendant and called as a

material witness, and claim that Burr should be disqualified based upon speculation.  In doing so,

the Trustee has ignores the plain language of the applicable standard, as cited above.[3]

81.    Rule 3.7 of the Georgia Rules of Professional Conduct provides as follows:

a. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a
necessary witness except where:
1. the testimony relates to an uncontested issue;
2. the testimony relates to the nature and value of legal services rendered in the
case; or
3. disqualification of the lawyer would work substantial hardship on the client.
b. A lawyer may act as advocate in a trial in which another lawyer in the lawyer's
firm is likely to be called as a witness unless precluded from doing so by Rule 1.7
or Rule 1.9.

82.    The Trustee attempts to disqualify Burr based upon Rule 3.7, which only applies

to a lawyer's role as "advocate in a trial," *before she has even filed a formal complaint*.  As of

now, Burr's representation of Respondents only involves responding to discovery requests under

Rule 2004, and in no way does Burr's representation implicate the role of "advocate in a trial."

---

[3] It should also be noted here, as above, that the Trustee fails to cite to any applicable
standard for disqualification in her motion.

21666702 v1

83.     Even if the Trustee were to actually file an adversary proceeding that required a trial,[4] this Court would likely be the fact-finder.  "When a judge is the trier of fact, the danger that the trier of fact will be unable to distinguish between testimony and advocacy is eliminated." *In re Harrington, George & Dunn, P.C.*, 2007 WL 7141825, at *2 (Bankr. N.D. Ga. 2007) (citing *Duncan v. Poythress*, 777 F.2d 1508, 1515, fn. 21 (11th Cir. 1985)).

84.     Moreover, in its role as a potential defendant in a potential future lawsuit, Burr is not prohibited by Rule 3.7 from representing the Respondents if another lawyer at Burr, who would not be called as a witness, advocates on behalf of Respondents.  Rule 3.7(b); *Duncan v. Poythress*, 777 F.2d at 1515, fn. 21.

85.     In her Brief, the Trustee cites to a single case, *Cherry v. Coast House, Ltd.*, 359 S.E. 2d 904 (Ga. 1987), in reference to the alleged "prohibition on a lawyer serving the dual role of fact witness and advocate."  *See* Brief, page 5.  Simply put, the *Cherry* case also does not stand for the proposition that the Trustee cites it for.

86.     First, the Trustee cites *Cherry* for a *per se* rule against acting as an advocate and witness in the same case.  However, the court in *Cherry* reasoned that it "should *balance* the harm caused to the plaintiff and the judicial system by the plaintiff being precluded from calling his attorneys to the stand with the plaintiff's right to the counsel of its choice," in ruling on disqualification.  *Id.* at 907 (quoting *Healthcrest, Inc. v. American Medical International, Inc. (AMI)*, 605 F.Supp. 1507 (N.D.Ga.1985)).

---

[4] The Trustee not only has insufficient proof to make the allegations necessary to file her "anticipated litigation," but any such litigation could be disposed of at summary judgment. Based upon preliminary discussions with the Trustee, it is apparent that the parties do not dispute any of the material facts; instead, Respondents dispute whether such facts support a claim for relief.

21666702 v1

87.     Second, the Trustee states that the *Cherry* court based its decision on the "virtual certainty that [the lawyer] will be called upon to testify . . . ."  *See* Brief, page 5. However, the *Cherry* court found that such certainty only "brings EC 5-9, 5-10, and DR 5-102 of the State Bar Rules into play."  *Cherry*, 359 S.E. 2d at 906-07.  Looking to the Georgia Bar Rule applicable to this case, Rule 3.7, it is clear that Burr, the firm, does not need to be disqualified based upon the possibility that one of its lawyers may act as a witness.

88.     Lastly, the court in *Cherry* reached its conclusion only upon finding that the lawyer would be "crucial" to the presentation of the case.   *Id.* at 907 (again, citing the *Healthcrest* case).   In this case, no testimony of a Burr lawyer would be crucial to the presentation of the Trustee's case.  Burr and Respondents have already produced or offered all documentary evidence that may relate to the Trustee's unsubstantiated claims.   Testimonial evidence from Burr would only be duplicative, and would not be nearly as important as the testimony of Messrs. Cabe and Cato, from whom Burr took all of its instructions.

## CONCLUSION

89.     Based upon the foregoing, the Court should deny the Trustee's Motion to Disqualify.  The Trustee's delay in filing the Motion to Disqualify for over a year, in and of itself, evidences the Trustee's waiver of the right to disqualification and warrants denial.  The undisputed facts show that the Trustee filed the motion purely as a litigation tactic, and without any concern for ethical violations, the integrity of the judicial process, or the effective administration of the estate.  Even so, the Trustee cannot meet her burden of proof on any issue required for disqualification.  Lastly, disqualification would serve no purpose in this case, cure no alleged harm, and would only burden the Respondents needlessly.

21666702 v1

WHEREFORE, Burr and its clients, Turnkey ATM Solutions, LLC, James Cabe and

Warren Cato, pray as follows –

(a) That the Motion to Disqualify be denied; and

(b) That the Court grant such other and further relief as it deems just and proper.

Respectfully submitted, this 11th day of September, 2014.

**BURR & FORMAN LLP**

*/s/ Jon E. Kane*_____
Jon E. Kane, Esq.
Florida Bar Number: 814202 (*Admitted Pro Hac Vice*)
BURR & FORMAN LLP
200 South Orange Avenue, Suite 800
Orlando, Florida 32801
Phone: (407) 540-6600
Fax: (407) 540-6601
E-mail: jkane@burr.com

-and-

Graham H. Stieglitz
Georgia Bar No. 682047
Bryan T. Glover
Georgia Bar No. 993070
Burr & Forman LLP
Suite 1100, 171 Seventeenth Street, N.W.
Atlanta, Georgia 30363
Phone: (404) 815-3000
Facsimile: (404) 214-7395
Email: gstiegli@burr.com
Email: bglover@burr.com

21666702 v1

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2014, I have caused a copy of the foregoing document, **Burr & Forman LLP's Response in Opposition to Trustee's Motion to Disqualify (Dkt. No. 115)**, to be served by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email upon the following:

Cabe & Cato, Inc.
8601 Dunwoody Place, Suite 106
Atlanta, GA 30350

Joseph J. Burton, Jr., Esq.
Mozley, Finlayson & Loggins, LLP One Premier Plaza - Suite 900
5605 Glenridge Drive Atlanta, GA 30342

Office of the United States Trustee
362 Richard B. Russell Building
75 Spring Street, SW
Atlanta, GA 30303

Barbara B. Stalzer, Esq.
Barbara Bell Stalzer, PC
60 Lenox Pointe, NE
Atlanta, GA 30324-3170

Andante Development LLC
c/o James H. Rollins, Esq.
Holland & Knight LLP
 1201 W. Peachtree Street, Suite 2000
Atlanta, GA 30309

Stonebridge Accounting & Forensics, LLC
Post Office Box 1290
Grayson, GA 30017

W. Russell Patterson, Jr., Esq.
Ragsdale Beals Seigler Patterson & Gray
2400 International Tower
229 Peachtree Street NE
Atlanta, GA 30303-1629

Lindsay C.T. Holt, Esq.
McLin Burnsed
1000 W. Main St.
P.O. Box 419357
Leesburg, FL 34749-1357

Phillip S. Smith, Esq.
McLin & Burnsed, P.A.
1000 W. Main Street
P.O. Box 419357
Leesburg, FL 34749-1357

/s/ Bryan T. Glover
Bryan T. Glover
Georgia Bar No. 993070

29

21666702 v1